# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL COPPOLINO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOTAL CALL INTERNATIONAL, INC.,<br><br>Defendant. | Civil Action No. 08-539 (FSH)(PS) |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN
CECCHI, STEWART & OLSTEIN
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

Paul M. Weiss
William M. Sweetnam
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiffs and
Proposed Class

Steven R. Jaffe
Mark S. Fistos
ARONOVITZ JAFFE
Museum Tower, Suite 2700
150 West Flagler Street
Miami, Florida  33130
(305) 372-2772

Eric Stoppenhagen
LAW OFFICE OF ERIC
STOPPENHAGEN
285 Avenue C, Suite #MB
New York, New York 10009
(646) 594-8669

## TABLE OF CONTENTS

Table Of Authorities ............................................................................................... ii

Preliminary Statement................................................................................................ 1

Statement Of Facts ..................................................................................................... 3

Legal Argument .......................................................................................................... 4

The *Lopez* Consent Decree Does Not Release The Claims Brought In This Case ................... 4

    A.    The Standards Governing A Motion To Dismiss ............................................... 4

    B.    The *Lopez* Decree Does Not Release The Claims Brought Here....................... 6

    C.    Plaintiff And Class Were Not Given
         The Opportunity To Opt Out Their Monetary Claims ....................................... 7

    D.    The *Lopez* Notice Was Inadequate:  It Did Not Apprise Class Members
         That They Could Opt Out And/Or That Their Damage Claims
         May Be Adjudicated And Released; It Was In English Only Despite
         The Largely Immigrant And Non-English-Speaking Composition Of
         The Class; It Addressed Total Call's Nondisclosure Of Rates On Calls
         Placed To Cellular Telephones, And Was Published Once In USA TODAY .... 9

    E.    Class Members Received No Benefits
         Under The Terms Of The *Lopez* Decree ......................................................... 14

    F.    The *IDT* Settlement Reflects The Due Process Concerns Missing In *Lopez* ..... 18

    G.    Even Under Tennessee Law, The *Lopez* Decree
         Lacks *Res Judicata* Effect Here ........................................................................ 19

    H.    Plaintiff Is Not Bound By The *Lopez* Release .................................................. 21

Conclusion ................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Agrolinz, Inc. v. Micro Flo Co.*, 202 F.3d 858 (6th Cir. 2000)...................................................... 20
*Arizona v. Calif.*, 530 U.S. 392 (2000). ......................................................................................... 19
*Baldwin v. Housing Authority of the City of Camden*, 278 F.Supp.2d 365 (D.N.J. 2003) ............ 4
*Bechtel Petroleum, Inc. v. Webster*, 636 F.Supp. 486 (N.D.Cal. 1984)................................. 21, 22
*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .................................................................. 4
*Benak v. Alliance Capital Managment*, 349 F.Supp.2d 882  (D.N.J. 2004) ................................... 5
*Besinga v. U.S.*, 923 F.2d 133 (9th Cir. 1991) ........................................................................... 9, 10
*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).................................................... 8
*Caldwell Trucking PRP Group v. Spalding Composites*, 890 F.Supp. 1247 (D.N.J. 1995).......... 4
*Cicelski v. Sears, Roebuck & Co.*, 348 N.W.2d 685 (Mich.App. 1984). ...................................... 16
*Colson v. Hilton Hotels*, 59 F.R.D. 324 (N.D. Ill. 1972) .............................................................. 16
*Cross v. Earls*, 517 S.W.2d 751 (Tenn. 1974)............................................................................... 22
*DaSilva v. Esmor Correctional Servs., Inc.*, 215 F.R.D. 477 (D.N.J. 2003) ............................... 13
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................... 8, 9
*Erikson v. Pardus*, 127 S.Ct. 2197 (2007). .................................................................................... 4
*Eulo v. Deval Aerodynamics, Inc.*, 430 F.3d 325 (3rd Cir. 1970)................................................... 6
*Fellner v. Tri-Union Seafoods, L.L.C.*, 2007 WL 87633 (D.N.J. 2007); ........................................ 5
*Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000) ..................................................... 8, 9
*Friends of Chamber Music v. City and Cty. of Denver*, 696 P. 2d 309 (Colo. 1985).................. 13
*General Electric Co. v. Deutz AG*, 270 F.3d 144 (3rd Cir. 2001) .................................................. 6
*Giles v. Hayes*, 1996 WL 101139 (Tenn. App., 1996) ................................................................. 20
*Gould Electronics, Inc. v. U.S.*, 220 F.3d 169 (3rd Cir. 2000). .................................................... 6
*Greenfield v. Villager Indus.*, 483 F.2d 824 (3rd Cir. 1973) ...................................................... 14
*Gross v. Barnett Bks., Inc.*, 934 F.Supp. 1340 (M.D. Fla. 1995).................................................. 11
*Hart v. Joseph Decosimo & Co., LLP*, 145 S.W.3d 67 (Tenn. App. 2004). ................................ 21
*Hiser v. Franklin*, 94 F.3d 1287 (9th Cir. 1996)........................................................................... 20
*Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738 (1976) ............................... 5
*Hutcheson v. Tenn. Valley Auth.*, 604 F.Supp. 543 (M.D. Tenn. 1985) ................................. 20, 21
*In Re Adams Golf, Inc. Securities. Litigation*, 381 F.3d 267 (3rd Cir. 2005) ............................... 6
*In re Bayside Prison Litigation*, 190 F.Supp.2d 755 (D.N.J. 2002) ............................................. 5
*In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997)..................... 5
*In re Conseco Life Insurance Co. Cost of Insurance. Litigation*,
  2005 WL 5678842 (C.D.Cal. 2005)........................................................................................... 22
*In re Folding Carton Antitrust Litigation*, 557 F.Supp. 1091 (N.D. Ill. 1983)............................ 16
*In re Matzo Food Products Litigation*, 156 F.R.D. 600 (D.N.J. 1994). ................................. 15, 17
*In re Microsoft Antitrust  Litigation*, 185 F.Supp.2d 519 (D.Md. 2002) ..................................... 17
*In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977).......................... 10
*In re Visa Check/MasterMoney Antitrust. Litigation*, 297 F.Supp.2d 503 (E.D.N.Y. 2003)........ 11
*Jackson v. Miller*, 776 S.W.2d 115 (Tenn. App. 1989) ............................................................... 21
*Kremer v. Chemical Const. Corp.*, 456 U.S. 461 (1982) ...................................................... 6, 7, 20
*Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001)............................................................................... 6
*Long v. Kirby-Smith*, 292 S.W.2d 216 (Tenn. App. 1956) ..................................................... 20, 21
*Mandujano v. Basic Veg. Prods.*, 541 F.2d 832 (9th Cir. 1976).................................................. 10
*Massengill v. Scott*, 738 S.W.2d 629 (Tenn. 1987) ...................................................................... 21
*Miller v. Fortis Benefits Insurance Co.*, 363 F.Supp.2d 700 (D.N.J. 2005) .................................. 6
*Montelongo v. Meese*, 803 F.2d 1341 (5th Cir. 1986) .................................................................. 11
*Moody v. Sears, Roebuck and Co.*, 2007 WL 2582193 (N.C. Super. Ct., May 07, 2007).. 6, 14, 16
*Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950) ........................................................... 9
*Neitzke v. Williams*, 490 U.S. 319 (1989) ...................................................................................... 5

*Nelson v. Greater Gadsden Housing Authority.*, 802 F.2d 405 (11th Cir. 1986) ........................ 16
*O'Leary v. Liberty Mutual Insurance Co.*, 923 F.2d 1062 (3rd Cir. 1991) ................................... 20
*Parker v. Time Warner Entertainment Co.*, L.P., 239 F.R.D. 318 (E.D.N.Y. 2007) .................... 9
*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292 (M.D.Pa. 1995)............................. 18
*Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)...................................................... 5
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................. 6, 8
*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .................................................................................... 5
*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998) ............................................... 13
*United States v. Athlone Indus.*, 746 F.3d 977 (3rd Cir. 1984)..................................................... 6
*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................................................ 11
*Ward v. Arm & Hammer*, 341 F.Supp.2d 499 (D.N.J. 2004)....................................................... 6
*Wilbur v. Owens*, 2 N.J. 167 (1949)........................................................................................... 15

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, FOURTH §21:31 ..................................................... 11

**Rules**

Fed.R.Civ.P. 12(b)(6)...................................................................................................................... 4
Fed.R.Civ.P. 23(b)(2)................................................................................................................. 8, 9
Fed.R.Civ.P. 23(b)(3)................................................................................................................. 8, 9
Fed.R.Civ.P. 23(c)(2)................................................................................................................. 9, 12
Fed.R.Civ.P. 8(a)(2)....................................................................................................................... 4

**Treatises**

1 ATLA's Litigating Tort Cases .............................................................................................. 11,13
3 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ................................................................... 11, 12

## PRELIMINARY STATEMENT

Defendant Total Call seeks dismissal of Plaintiff's Complaint based on a July 2007 Consent Decree entered by a Tennessee Chancery Court in *Lopez et al. v. Van Oriental Food Store and Total Call International, Inc.*, CH-04-2282-2 ("*Lopez*"). Total Call contends that the entirety of the claims brought here are barred by the *Lopez* decree – based on principles of "release" and *res judicata* – even though the *Lopez* decree provided *no* monetary relief for putative class members, was a "no opt out" decree, and "notice" was accomplished through a one-time English-only publication in USA TODAY.

Despite what Plaintiff alleges is egregious improper conduct by Defendant that has resulted in Defendant pocketing millions of dollars of ill-gotten gains at the expense of putative class members, the *Lopez* decree remarkably provided class members with no money relief. Rather, the decree simply required Defendant to disclose that "calls made to *cellular* phones may be subject to a higher per minute charge." (Dec. of Michael DeSantis, Ex. D, at 5, ¶VI, D) The Decree contained a release provision which, Defendant now contends, applies to Plaintiff and operates as *res judicata* as to him and the other Class members' claims including all money claims against Total Call.

Defendant's contentions are without merit. First, if the decree released any claims, it would be limited to the claims for injunctive relief. The decree did not release claims for monetary relief alleged here. As discussed below, Plaintiff was not given the "full and fair opportunity to litigate" his claims in *Lopez* as required under constitutional due process and full faith and credit. Most significantly, *Lopez* was a mandatory *injunctive* relief class where class members did not have an opportunity to opt out. Second, the *Lopez* Notice was not reasonably

calculated to reach the Class sought to be certified here.[1]  It did not apprise class members that they could opt out or that their claims for damages may be adjudicated and released without any compensation, was not drafted in generally comprehensible language or accompanied by Spanish or other foreign-language translation, and was an inconspicuous one-time publication in a mainstream newspaper.  Moreover, the lack of any monetary relief, meaningful or otherwise, secured for absent class members in *Lopez* undermines the adequacy and fairness of representation essential to due process.  Finally, from the face of the pleadings it appears that neither *res judicata* nor the doctrine of release apply here because *Lopez* involved different causes of action, Plaintiff was neither a party nor in privity thereto, and the *Lopez* Notice, Consent Decree, and Complaint disclose that the *Lopez* Settlement Class was intended to be limited in scope to purchasers of Defendant's calling cards who used them to place calls to *cellular* telephones.  In contrast, the case *sub judice* challenges Total Call's improper charges and disclosures *irrespective* of the type of telephone to which calls were placed.  At a minimum, Defendants' motion to dismiss should be denied for placing reliance on facts beyond the four corners of the well-pleaded complaint.

For these and other reasons, as detailed below, Defendant's motion should be denied.

---

[1]    Defendant does not even begin to explain whether and how the "notice of the proposed settlement given to the members of the class" (Dec. of Michael DeSantis, Ex. A) complied with Due Process.  Instead, it merely mentions that "[i]n accordance with [the Tennessee court's preliminary approval of the settlement], notice of the proposed settlement was published in the nationwide USA Today newspaper on May 14, 2007." (Dec. of Michael DeSantis, Ex. B) As discussed *infra*, this notice plan, without more, is insufficient to meet Due Process notice requirements.  Furthermore, in reciting the *res judicata* standards of Tennessee, Defendant omits any mention of the "full and fair opportunity to be heard" Due Process prong of Tennessee's *res judicata* law.

## **STATEMENT OF FACTS**

On January 16, 2008, Plaintiff Michael Coppolino ("Plaintiff") filed a Class Action Complaint on behalf of himself and purchasers of Defendant's prepaid telephone cards, seeking relief from Defendant Total Call's unfair, deceptive and fraudulent practices it has committed in the sale, marketing and servicing of its Prepaid Phone Cards.   (Complaint, ¶ 1.)  Total Call's cards and accompanying call prompts/posters uniformly represent a specific number of minutes available to the purchaser in exchange for the customer's payment of a sum certain (*e.g.*, $5.00 for 10 minutes).  (Complaint, ¶¶ 22-23.)  However, customers are either subjected to rates in excess of those stated in the uniform representations on the Cards, or to hidden charges. (*Id.*) These charges and other undisclosed conditions materially reduce the value of Defendant's Prepaid Phone Cards.  (Complaint, ¶¶ 24-25.)

Total Call markets and sells Prepaid Phone Cards to immigrants and other consumers who make international calls, and what makes Defendant's insidious scheme especially abhorrent is that it systematically preys on vulnerable segments of society – the elderly and immigrant populations.  (Complaint, ¶¶ 3, 19-20.)  Plaintiff complains that he and other purchasers of Defendant's Cards have not received the Cards' full value, and suffered damages as a result of Defendant's wrongful practices.   Specifically, Plaintiff purchased a Prepaid Phone Card (Complaint, ¶ 10 and Exhibit A) that purported to provide a specific amount of calling time, yet imposed hidden conditions and costs that significantly reduced the promised calling time and stated value of the Card.  (Complaint, ¶ 25)

## LEGAL ARGUMENT

### THE *LOPEZ* CONSENT DECREE DOES NOT
### RELEASE THE CLAIMS BROUGHT IN THIS CASE

Plaintiff Total Call moves to dismiss Plaintiff's Complaint based upon the purported class settlement of claims asserted in the *Lopez* action in Tennessee state court. For the reasons set forth below, that purported settlement does not bar Plaintiff's claims because it did not comply with fundamental due process. There was no opportunity for class members to opt out of the *Lopez* settlement, notice of the settlement was inadequate, and the terms of the settlement were fundamentally unfair. As a result, Total Call's motion to dismiss must be denied.

**A.    The Standards Governing a Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claim stated in the complaint. A complaint will be dismissed on the pleadings if the plaintiff has failed to plead grounds to his entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Because it is preferable to have civil actions decided upon evidence rather than on the pleadings, Rule 12(b)(6) motions are discouraged. *Baldwin v. Housing Authority of the City of Camden*, 278 F.Supp.2d 365, 373 (D.N.J. 2003); *Caldwell Trucking PRP Group v. Spalding Composites*, 890 F.Supp. 1247, 1252 (D.N.J. 1995).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Specific facts are not necessary. The complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Erikson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). In deciding a motion to dismiss, the court must assume that all of the factual allegations set forth in the complaint are true, *Twombly*, 127 S.Ct. at 1965; *Hospital Building Co.*

*v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976), and it must draw all reasonable inferences from the pleaded factual allegations in favor of the non-moving party. *Philips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff should be allowed to submit evidence to support the claims. *Twombly*, 127 S.Ct. at 1965 (*citing Neitzke v. Williams*, 490 U.S. 319, 327 (1989)(Rule 12(b)(6) does not countenance . . . dismissals based upon a judge's disbelief of a complaint's factual allegations") *and Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.")) Applying these rules, stating a claim requires that the complaint have sufficient matter, taken as true, to suggest that the elements of a claim exist, and that there is a reasonable expectation that discovery will reveal evidence to support the elements of a claim. *Philips*, 515 F.3d at 234.

Generally, motions to dismiss are confined to the four corners of the complaint. However, documents attached to, integral to or relied upon in the pleadings, as well as matters of public record, are deemed to be part of the pleadings, so they may be considered by the court without converting the motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *In re Bayside Prison Litigation*, 190 F.Supp.2d 755, 760 (D.N.J. 2002). The Court may take judicial notice of public records on a motion to dismiss. *Fellner v. Tri-Union Seafoods, L.L.C.*, 2007 WL 87633 at *2 (D.N.J. 2007); *Benak v. Alliance Capital Managment*, 349 F.Supp.2d 882, 889, n. 8 (D.N.J. 2004).

The burden of demonstrating that no claim has been stated is upon the movant. *Gould Electronics, Inc. v. U.S*., 220 F.3d 169, 178 (3rd Cir. 2000). As a general matter, an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6). *In Re Adams Golf, Inc. Securities. Litigation*, 381 F.3d 267, 277 (3rd Cir. 2005). In order to provide grounds for dismissal, an affirmative defense must appear on the face of the complaint when Rule 12(b)(6) standards are applied. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001); *Miller v. Fortis Benefits Insurance Co.*, 363 F.Supp.2d 700, 703 (D.N.J. 2005); *Ward v. Arm & Hammer*, 341 F.Supp.2d 499 (D.N.J. 2004). "Release" and *res judicata* are affirmative defenses on which Defendant has the burden of proof. Fed.R.Civ.P. Rule 8(c); *General Electric Co. v. Deutz AG*, 270 F.3d 144, 158 (3rd Cir. 2001) (*citing United States v. Athlone Indus*., 746 F.3d 977, 983 (3rd Cir. 1984)); *Eulo v. Deval Aerodynamics, Inc*., 430 F.3d 325, 329 (3rd Cir. 1970).

**B.    The *Lopez* Decree Does Not Release The Claims Brought Here**

It is disingenuous, though perhaps understandable, for Defendant to contend that the *Lopez* decree precludes this lawsuit. To satisfy due process and full faith and credit, a federal court must give preclusive effect to an earlier state court judgment only where the plaintiff was given due process-mandated "full and fair opportunity to litigate." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 482 (1982). In class actions, compliance with due process is an added element in the *res judicata* analysis. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 805 (1985). Under similar circumstances, a North Carolina state court refused to give full faith and credit to a settlement approved by an Illinois court. *Moody v. Sears, Roebuck and Co.*, 2007 WL 2582193, at *7 (N.C. Super. Ct., May 07, 2007) (refusing to give full faith and credit to Illinois court-approved class settlement based on improper content and improper dissemination of class settlement notice)

A cursory review of the *Lopez* decree reveals the following: (1) the consent decree was "injunctive relief" only - no money was paid to class members or made available to them; (2) the notice was for an "injunctive relief" only decree - it permitted no opt outs; (3) that class was not adequately represented as the purported release grossly exceeded the claims alleged; and (4) the *Lopez* decree itself was substantively unfair. For all of these reasons, the consent decree does not and cannot as a matter of law act to release or preclude Plaintiff and the Class's claims that, in this case, seek monetary relief. Plaintiff was not a party to the *Lopez* decree, and, despite all its other infirmities, the scope of the *Lopez* action appears to be restricted to Total Call's undisclosed rates on calls placed to ***cellular*** telephones. (Dec. of Michael DeSantis, Ex. A, ¶1.]

**C.    Plaintiff and Class Were Not Given the**
**Opportunity to Opt Out Their Monetary Claims**

Defendant utterly fails to explain how (and whether) Plaintiff was given a meaningful opportunity to opt out. In short, he *wasn't*. The *Lopez* decree provided the class with *injunctive* relief only, and did not afford a right for class members to exclude themselves from the class. The injunctive relief obtained in *Lopez* consisted only of an agreement that Total Call calling cards issued after July 2, 2007 (the date of the decree's approval) would disclose that "calls made to *cellular* phones may be subject to a higher per minute charge." (Dec. of Michael DeSantis, Ex. C, ¶ VI, D.)

Defendant does not dispute, and its own case law authority instructs, that an injunctive-relief class settlement is not binding on - and cannot release - monetary claims in later suits where class members were not given the right to opt out. *Kremer*, 456 U.S. at 482 ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."). For this

reason, "all potential members in a Rule 23(b)(3) class must be allowed to opt out of the class. In a Rule 23(b)(2) class action, by contrast, there is no requirement for individualized notice beyond that required by due process, and the class members are not allowed to opt out." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000)(*citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)).  In *Frank*, the Ninth Circuit explained: "Under *Eisen*, class members in a Rule 23(b)(3) class may be bound to the result of that action only if the notice and opt-out requirements applicable to Rule 23(b)(3) actions are satisfied."  *Id*. at 852.  *See also Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992)("[M]inimum due process requires that 'an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court,' if monetary claims are involved.") (*quoting Phillips Petroleum*, 472 U.S. at 812).

In *Lopez*, class members could not opt out of the class; their inclusion in the decree class was mandatory. The release language in the Tennessee Consent Decree excludes claims by Class members who opt out of the class (Dec. of Michael DeSantis, Ex. C at 4), but the Notice does not apprise Class members that they are allowed to opt out or provide any mechanism for a Class Member to opt out. Thus, because Plaintiff and Class members with damage claims were not given the opportunity to opt out, *Lopez* does not preclude Plaintiff's monetary-relief class action. For this reason alone, Defendant's motion to dismiss should be denied.

**D.**     **The *Lopez* Notice Was Inadequate:  It Did Not Apprise Class Members That They Could Opt Out and/or That Their Damage Claims May Be Adjudicated and Released; It was in English Only Despite The Largely Immigrant And Non-English-Speaking Composition Of The Class; It Addressed Total Call's Nondisclosure of Rates On Calls Placed to Cellular Telephones, And Was Published Once In USA TODAY**

Beside the fact that *Lopez* does not bind Plaintiff's and the Class's claims for monetary relief, the *Lopez* notice to absent class members was seriously deficient in both content and manner of dissemination.  *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 315 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *Parker v. Time Warner Entertainment Co.*, L.P., 239 F.R.D. 318, 335 (E.D.N.Y. 2007) ("[A] certified class action not complying with 23(b)(3) notice requirements cannot have a *res judicata* effect on subsequent damages claims." (*citing Besinga v. U.S.*, 923 F.2d 133, 135-36 (9th Cir. 1991)).  Rule 23(b)(3) "damages" class actions require a higher standard of notice than do Rule 23(b)(2) "injunction" class actions.  "Rule 23(c)(2) requires a higher standard of notice for a 23(b)(3) class action, under which individual notice must be provided to 'all members who can be identified through reasonable effort.'" *Frank*, 216 F.3d at 851 (*citing Eisen*) and 852 (class members in Rule 23(b)(3) class action not bound by outcome of prior action absent compliance with Rule 23(b)(3) notice).

First, the *Lopez* Notice[2] did not apprise class members that they could opt out of the decree.  In particular, Fed.R.Civ.P. 23(c)(2) provides:

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (a) the court will exclude

---

[2]     The *Lopez* Notice was not included with Total Call's motion papers.  It is annexed as Exhibit A to the Declaration of Lindsey H. Taylor filed herewith.

> him from the class if he so requests by a specified date; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

*Besinga*, 923 F.2d at 135-36.

Second, the Notice did not inform class members that their claims for damages were to be released as part of the *Lopez* consent decree. "Before an absent class member may be forever barred from pursuing an individual damage claim, however, due process requires that he receive some form of notice that the class action is pending and that his damage claims may be adjudicated as part of it." *Besinga,* 923 F.2d at 137 n.7. The focus of the Notice is solely on Defendant's inadequate disclosure to calling-card consumers of higher per-minute rates on calls made to *cell phones*. There is no mention that people may have sustained a monetary loss and that their claims would be compromised in the *Lopez* decree.

Third, there is no evidence of any attempt by the parties in *Lopez* to ensure that non-English-speaking class members could read and/or understand the Notice; the absence of even one participating class member evidences the contrary. It is extremely unlikely that non-English speaking customers of Total Call could read and/or understand the USA TODAY notice, even if they were lucky enough to have seen it. *Mandujano v. Basic Veg. Prods*., 541 F.2d 832, 835 (9th Cir. 1976) (reversing approval of minority discrimination class settlement. "Rule 23 (e) Fed. R. Civ. P., requires that notice of a 'proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.' To comply with the spirit of this rule, it is necessary that the notice be given in a form and manner that does not systematically leave an *identifiable group* without notice.")(emphasis added). *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104 (5th Cir. 1977) (due process and Rule 23 (c)(2) require notice to

be written in terms that "insofar as possible, may be understood by the average absentee class member.") *See also* ATLA's Litigating Tort Cases §9:14 (listing summary notice by publication in "*demographically* selected magazines or newspapers" as part of modern class notice program). Thus, "Spanish and other non-English language notices, where relevant, have been used to increase potential class members' comprehension of the notice and their option of exclusion or affirmative response, when appropriate." 3 NEWBERG ON CLASS ACTIONS § 8:39 at 284 (4th ed. 2002) (*citing* Antibiotics Antitrust Consumer Class Notice M19-93A (1975)). "*Bilingual notices, or notices written in the native language of the majority of the class*, are examples of how notice functions have been achieved in practice." *Id.*, "Content of Rule 23(c)(2) notice," §8:31 (emphasis added). Further, "Counsel should discuss with the court whether class members are likely to require notice in a language other than English or delivery by a means other than mail." MANUAL FOR COMPLEX LITIGATION, FOURTH §21:31. *See also Walters v. Reno*, 145 F.3d 1032, 1049-50 (9th Cir. 1998) ("Given that Spanish is the primary language of many aliens who have been subject to final orders with respect to charges of document fraud, we think that this requirement increases the likelihood that class members will learn of the district court's ruling."); *In re Visa Check/MasterMoney Antitrust. Litigation*, 297 F.Supp.2d 503, 516 (E.D.N.Y. 2003) ("It would have been a useful addition to the notice to have included a bulletin (in Spanish) that a Spanish translation of the notice was available on a specified website."). *Accord Montelongo v. Meese*, 803 F.2d 1341, 1352 (5th Cir. 1986) (order requiring individual notice in English and Spanish to all persons who could be reasonably located, together with bilingual radio and newspaper announcements satisfied Rule 23(c)); *Gross v. Barnett Bks., Inc.*, 934 F.Supp. 1340, 1345 (M.D. Fla. 1995) (publication notice in both English and Spanish satisfied Rule 23(c)).

Total Call sells its calling cards in retail outlets, such as convenience stores and gas stations, and promotes them heavily in low-income and immigrant communities. (*See* Complaint, ¶ 3). The need for Spanish (and perhaps additional foreign) language notice in this case is obvious, yet was ignored in *Lopez*, increasing the likelihood that a majority of the *Lopez* class had no knowledge of the case or the decree.[3] Further, Total Call's phone cards are sold under various ethnic brand names, not under Total Call's name. (*See* Dec. of Eric Stoppenhagen, ¶¶ 3-4, and Ex. A). Total Call's name appears inconspicuously, only on the back of its phone cards. (Dec. of Stoppenhagen, Exs. B and C) The Notice mentions only Total Call, not any of its various brand names. Assuming that a Total Call customer actually saw and understood the Notice, it is unlikely that the customer would make the connection between the product they bought and Total Call.

Fourth, the *Lopez* Class Notice is inconsistent with Rule 23 requiring the class certification notice to be phrased "concisely and clearly" and "in plain, easily understood language." Fed.R.Civ.P. 23 (c)(2)(B). It contains "legalese" which an average person is unlikely to comprehend – "sets forth," "class action," "procedural rights relating to this settlement," "veracity," "enjoin conduct under the TCPA [left undefined] or Tennessee common law," "facsimile," "in consideration of the settlement," "claims pursued," etc. *See* NEWBERG, §8:32 (avoidance of "legal jargon" is "of primary importance" in crafting language of notice to class). *See also id.*, § 8:31 ("The notice should be brief and reasonably clear to the minimally sophisticated layperson."). Another material defect in the *Lopez* settlement notice program is the

---

[3]    To be sure, Defendant's own records may establish the ethnic and age segments of its customer base.

absence of any Internet postings which is integral to "most modern…consumer class action notice programs." 1 ATLA's Litigating Tort Cases § 9:14.

Fifth, the *Lopez* Class Notice explained that the *Lopez* case was brought because "Total Call failed to adequately disclose to its consumers that calls made to **cellular** phones may be subject to a higher per minute charge" (emphasis added).  A reasonable person would have been led to conclude that the *Lopez* decree provided relief only to persons placing calls to *cell phone* users who purchased Defendant's Cards.  *Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1228 (11th Cir. 1998) ("gravamen" of class claims described in settlement notice misleading to reasonable person).  Nowhere in the instant Complaint does Plaintiff allege that he or any other Class member's claims arise out of calling cards used to place calls to *cellular* telephones.  By assuming that Plaintiff belongs to the *Lopez* "Class," Total Call improperly relies upon facts beyond the four corners of the Class Action Complaint, and its Rule 12 (b) (6) motion to dismiss may be denied on this basis alone.  *See Section A above.*  As to the manner of its dissemination, notice of the *Lopez* decree was accomplished by a one-time publication in USA TODAY, and it is well recognized that notice by publication may be futile unless properly targeted and directed at the class.  *DaSilva v. Esmor Correctional Servs., Inc.,* 215 F.R.D. 477, 479 (D.N.J. 2003) (publication in USA TODAY not likely to be seen by alien detainees).

Further, the *Lopez* Notice was published only once in paper-based media.  A one-time publication is generally insufficient by today's standards to constitute proper notice.  *Friends of Chamber Music v. City and Cty. of Denver,* 696 P. 2d 309, 318 (Colo. 1985) ("Although published in the entertainment and sports sections, where the notices most likely would be seen by ticket purchasers, the single publication in each [of the two] newspaper[s] may have been insufficient constructive notice even to supplement notice to identifiable class members.") (*citing*

*Mullane, supra*); *Greenfield v. Villager Indus.*, 483 F.2d 824, 830 (3rd Cir. 1973) (notice to national stockholders published once in Wall Street Journal and Philadelphia Bulletin not adequate) (*cited in Friends of Chamber Music*).  In *Moody*, the notice of the proposed settlement was published in two issues of Parade magazine, once in USA TODAY, and once each in local papers in 25 of the defendants' largest markets.  *Moody*, 2007 WL 2582193 at * 8. The court there commented "[i]t is hard to imagine a more inadequate notice plan and claims process."  *Id.* at *9.

The attorneys and court in *Lopez* outdid the *Moody* court's imagination.  The *Lopez* notice was even less adequate than in *Moody*. In *Lopez*, the notice was run in a single edition of USA TODAY, despite no apparent showing that individual notice was not possible.  Defendant offers no evidence that any class member even read the notice or understood it.  On the contrary, Defendant's contention that "[n]o class members appeared at the fairness hearing to object to the proposed settlement" (Defendant's Brief at 4; Dec. of Michael DeSantis, Ex. C at 2) is evidence that that the one-time Notice was neither read nor understood.

**E.**    **Class Members Received No Benefits Under the Terms of the *Lopez* Decree**

Remarkably, *Lopez* conferred absolutely no monetary benefit on Plaintiff or the *Lopez* "class."  Instead, the named plaintiffs in *Lopez* each received $1,500, counsel received $262,500, and Total Call donated a total of $100,000.  Two churches, the Catholic Church in Midtown Memphis, Tenn. and to Faith Community Church in Corpus Christi, Tex.[4] (designated by

---

[4]    There does not appear to be a church in Memphis with the name "Catholic Church in Midtown Memphis".  There is a Blessed Sacrament Catholic Church in midtown Memphis with 120 families.  If this church was selected by one of the *Lopez* plaintiffs, it is unlikely they were parishioners, since a parishioner would most likely know the name of their own church.  There was no information available on the Internet regarding Faith Community Church in Corpus Christi, Texas other than an address.

plaintiffs or plaintiffs' counsel) each received $33,333, and a well-endowed private institution, Pepperdine University, in Malibu, Cal., received $33,334 (designated by defendants or defendants' counsel).  (Dec. of Michael DeSantis, Ex. C, ¶ VI, A and B.)[5]

The doctrine of *cy pres*, Norman French for "so near" or "as near", was first applied to testamentary charitable gifts or trusts.  In cases where the precise intent of the testator is impossible or impractical to perform, equity will exercise its power to carry out a similar charitable purpose in accordance with the more general charitable intent.  *Wilbur v. Owens*, 2 N.J. 167, 177-78 (1949).  In class actions, *cy pres* has been used to distribute settlement funds for the indirect benefit of the class where actual distribution to class members is not feasible.  *In re Matzo Food Products Litigation*, 156 F.R.D. 600, 605 (D.N.J. 1994).  *See generally* NEWBERG, § 10.17.  In such cases, funds are paid to a charitable organization to be used for designated purposes.  *Matzo Food Products, id.*  It is generally used where unclaimed funds remain after distribution to class members.  *Id.*  Cy pres has also been utilized where class recovery cannot feasibly be distributed among class members, such as where class members cannot be located or individual recoveries are so small that distribution would be uneconomical.  *Id.* However, *cy pres* has rarely been approved for distribution of the *entire* settlement amount, where, as here, there is no opportunity for actual class members to submit claims.  Indeed, similar settlement proposals have been rejected, as they do not confer any benefit on the class.  *Id.* at 606-07.  In a proposed class settlement similar to that which was approved in *Lopez*, Judge Ackerman held "I simply cannot conclude that the settlement, under which the class members recover nothing, is fair,

---

[5]     Ironically, the plaintiff lawyers who negotiated *Lopez* are some of the very same lawyers who were heavily criticized by the North Carolina court in the *Moody* settlement involving Sears.

adequate and reasonable." *Id.* at 606.  Likewise, the underlying consent decree – in which class members received nothing – is fundamentally unfair, and should not act to release the instant claims.

Here, class members have not been afforded any opportunity to prove claims or to obtain a share of the "settlement fund." *Boden*, *supra*; *cf. In re Folding Carton Antitrust Litigation*, 557 F.Supp. 1091 (N.D.Ill. 1983) (*cy pres* distribution of unclaimed settlement funds after submission and payment of claims by individual class members); *Cicelski v. Sears, Roebuck & Co.*, 348 N.W.2d 685, 689 (Mich.App. 1984).  Indeed, it is rarely appropriate to use *cy pres* as the *exclusive* means of settling class cases.  Rather, it is most commonly used as a means of distributing funds that are unclaimed by actual class members.  *See, e.g., Folding Carton Antitrust Litigation*, 744 F.2d at 1254 (it was appropriate for the district court to consider the *cy pres* doctrine to achieve an equitable disposition of a $6 million reserve fund remaining after distribution of 97% of the class settlement fund to actual and some late claimants); *Nelson v. Greater Gadsden Housing Authority.*, 802 F.2d 405, 409 (11th Cir. 1986) (considering *cy pres* for the limited purpose of distributing unclaimed funds); *Colson v. Hilton Hotels*, 59 F.R.D. 324 (N.D.Ill. 1972) (hotel telephone overcharges antitrust) ($5,157,406 settlement fund with only $18,980 paid to verified claimants and the rest credited to future guests at rate of $0.50 per occupied room per stay).

Plaintiff is aware of no instance in which *cy pres* has been approved where, as here, there are persons who can prove their membership in the class and who are likely to come forward and make claims.  The settling parties in *Lopez* ignored the fact that there are numerous persons, like

---

*Moody,* 2007 WL 2582193, at *16 ("In class actions, inadequate representation by class counsel is another reason for refusing to extend full faith and credit to a foreign judgment.").

Plaintiff, who purchased cards subject to Total Call's hidden terms and conditions, and who therefore ought to benefit from any settlement. Indeed, the *Lopez* settlement did not even provide an *indirect* benefit to class members. As Judge Ackerman noted in *Matzo Food Products*, *cy pres* charitable gifts are generally given for use for designated purposes. *Matzo Food Products,* 156 F.R.D. at 605. In *Lopez*, by contrast, the charitable donations are given with no strings attached. (Dec. of Michael DeSantis, Ex. C, ¶ VI., A.) Thus, assuming the donations have even been made[6], there is no requirement that the donations be used for the benefit of the members of the class in any way. The donations could be used, consistently with the terms of the Consent Decree, for paying ordinary bills rather than for some purpose which might arguably benefit class members. The decree sought to be enforced here is reminiscent of other, rejected class settlements that proposed exclusively *cy pres* distributions not targeted at class members. *See, e.g., In re Microsoft Antitrust Litigation*, 185 F.Supp.2d 519, 520-21 (D.Md. 2002) (preliminary settlement approval rejected; "I cannot presently determine the adequacy of the proposed settlement because the record has not been sufficiently developed on the question of the underlying value of the class claims", and "I have also concluded, as a substantive matter, that the record as it now exists demonstrates that the charitable foundation contemplated by the agreement is not sufficiently funded both to fulfill the eleemosynary purposes justifying a *cy pres* remedy and to assure that effectuation of the agreement would not have anti-competitive effects."); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) ("Although we do not generally disapprove of *cy pres*, we cannot affirm the district court's application in this case. The district court's proposal benefits a group far too remote from the

---

[6]     The July 2, 2007 Consent Decree requires that the donations be made within 36 months, or by July 2, 2010.

plaintiff class.  Even where *cy pres* is considered, it will be rejected when the proposed distribution fails to provide the 'next best' distribution.'  The district court's plan permits distribution to areas where the class members may live, but there is no reasonable certainty that any member will be benefitted."); *Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292 (M.D.Pa. 1995) (settlement rejected because (1) plaintiffs failed to provide sufficient evidence demonstrating value of certificates distributed to class members and (2) certificates would be distributable only to approximately 50% of the class but claims of entire class would be discharged, even though same type of injury was sustained by all class members and all had same right of recovery against settling defendant).

**F.    The *IDT* Settlement Reflects the Due Process Concerns Missing In *Lopez*.**

In contrast with the *Lopez* decree, both aspects of due process, proper class notice and adequacy/ fairness of representation, were ensured in a recent settlement by one of Defendant's competitors, IDT Corporation, in a class action in the United States District Court for New Jersey, which was approved in May 2007 by Judge Susan Wigenton.  *In re: IDT Corp. Calling Card Terms Litig.*, MDL 1550, Civil Action No. 03-375(SDW)(D.N.J., 5/15/07) (Final Approval Order).  The fairness of that settlement and adequacy of representation was evidenced by, among other things, the monetary and equitable benefits provided to the class.  Among other things, the Class Settlement Agreement and Release (attached hereto as Exhibit 1) obligated IDT to create a common fund of $15 million pool to be distributed to those consumers who purchased an IDT card in any amount, and $5 million for those who purchased an IDT card in a $5 or greater amount, and those who are rechargeable-card users.  (*Id.*, ¶6 subds. d and e.)

Proper notice was ensured, too.  Not only did the Settlement Agreement provide for the publication of both English and Spanish notices (¶4, subds. a and f), but it also provided for an

Internet-based notice and for publication of class notices in Spanish- and Chinese-language media, in addition to USA TODAY. (*Id*., subd. b) Critically, the IDT Settlement Agreement provided that IDT would provide its prepaid card distributors with a notice of the settlement to be posted at retail locations. (*Id*., subd. c.) To the extent that IDT had retained on file the address information of its customers, it provided those persons with direct mail notice. (*Id*., subd. d.) IDT also committed itself to voice prompts in English, Spanish and Chinese, informing inquiring customers of the settlement. (*Id*., subd. e.)

Unlike Defendant's Consent Decree, the IDT Settlement imposed meaningful remedial obligations on IDT. IDT committed itself to providing specific information on how rates go up, and by what amounts, and to provide postings and customer service numbers enabling consumers to obtain that information. (IDT Settlement 6 b (1)). IDT further promised not to distribute cards that do not comply with state disclosure law and to submit to the New Jersey AG proposed disclosure regulations. (*Id*., 6 b (4) and c). By contrast, in *Lopez*, Total Call's obligation consists of merely placing on the back of its prepaid phone cards the following "disclosure" language: "calls made to cellular phones maybe subject to a higher per minute charge." (Dec. of Michael DeSantis, Ex. C, ¶ VI, D)

## G.    Even Under Tennessee Law, the *Lopez* Decree Lacks *Res Judicata* Effect Here

There is no identity of parties or causes of action in this and the *Lopez* case. Under Tennessee law of claim preclusion,[7] or *res judicata*, a final judgment will bar further action where, *inter alia*, the same parties or their privies were involved in both suits and the causes of

---

[7]    A consent judgment ordinarily supports *claim* preclusion, but not *issue* preclusion. *Arizona v. Calif.,* 530 U.S. 392, 414 (2000). Hence, the general question of Defendant's improper imposition of charges on users of its calling cards is not barred from litigation in Plaintiff's class action.

action were identical. *Hutcheson v. Tenn. Valley Auth.*, 604 F.Supp. 543, 550 (M.D. Tenn. 1985) ("The principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case."). The preclusive effect of a consent decree is determined by the parties' intent. *Agrolinz, Inc. v. Micro Flo Co.*, 202 F.3d 858, 861 (6th Cir. 2000). A consent decree is binding only "according to its terms upon those who consent, sign or authorize it." *Long v. Kirby-Smith*, 292 S.W.2d 216, 222 (Tenn. App. 1956). "Identity" must also obtain for the evidence sustaining each action. *Giles v. Hayes,* 1996 WL 101139, at *3 (Tenn. App., 1996). Furthermore, *res judicata* applies to bar a subsequent claim only if the previous adjudication offered "a full and fair opportunity to be heard" on the same claim. *Hutcheson,* 604 F.Supp. at 551 (*citing Kremer,* 456 U.S. at 465).

Here, Defendant offers no proof that Plaintiff "signed, consented to, or authorized the entry of this order." *Long, id.* Further, *Lopez* was about undisclosed rates on calls made to *cellular* telephones, and both the *Lopez* Complaint and Consent Decree addressed Defendant's nondisclosure of rates on calls placed to *cellular* telephones. Plaintiff's claims are not so limited. (*See* Sec. B, *supra*.) Thus, contrary to Defendants' contention, the "wrong" for which Defendant was sued in *Lopez* was substantively different, *Hutcheson,* 604 F.Supp. at 549, and so the claims in the two actions do not arise from "a common nucleus of operative facts." *Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir. 1996).

Further, the legal claims and relief pursued in this lawsuit by Plaintiff and the Class differ substantively from those in the *Lopez* suit. *O'Leary v. Liberty Mutual Insurance. Co.*, 923 F.2d 1062, 1065 (3rd Cir. 1991) (state court judgment lacked binding effect on plaintiffs' federal court action because causes of action not "identical"; among other things, plaintiff's prior state court action was enforcement of arbitration clause and his federal action, a direct claim for insurance

benefits; further, plaintiff in state court action did not seek damages); *Massengill v. Scott*, 738 S.W.2d 629, 630-31 (Tenn. 1987) (*res judicata* did not bar plaintiff's common-law claims where prior claim was filed under §1983); *Bechtel Petroleum, Inc. v. Webster*, 636 F.Supp. 486, 500-01 (N.D.Cal. 1984) (release of FLSA claims in federal court not *res judicata* in state action seeking broader remedies). *Lopez* was a consent decree of Tennessee law claims for injunctive relief only. By contrast, Plaintiff seeks monetary relief under state consumer protection statutes and common law.

Moreover, the evidence in the *Lopez* action, which was about *cellular* phones, was different from that which addresses Defendant's general practices in regard to its calling-card products. In addition, *Lopez* did not afford Plaintiff and the Class (Tennessee law- and) Due Process- mandated "full and fair opportunity to be heard" because, again, that action dealt with calls placed to *cell* phones. *Hutcheson,* 604 F.Supp. at 551 (two prior actions did not provide "full and fair opportunity to be heard" because they were "decided in absence of specific facts relating to the alleged discriminatory effect of the salary/benefit survey").

Therefore, the *Lopez* decree is not *res judicata* in this case.

**H.      Plaintiff Is Not Bound By The *Lopez* Release**

Finally, Defendant fails to meet its burden of showing the applicability of the defense of "release." As detailed above, Plaintiff was denied proper (indeed, any) notice, and was not privy to the *Lopez* decree. *Long,* 292 S.W.2d at 222; *Hart v. Joseph Decosimo & Co., LLP,* 145 S.W.3d 67, 79 (Tenn. App. 2004). Indeed, Plaintiff had no notice or knowledge of the Tennessee decree until Defendant filed the instant motion to dismiss and attached the Tennessee Consent Decree as an exhibit; hence Plaintiff could not have intended to release his claims. *See Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. App. 1989) (claims not barred by release where plaintiffs

had no knowledge of it and hence had no intent to release it).  The claims in the two actions lack the "identical factual predicate."  *In re Conseco Life Insurance Co. Cost of Insurance. Litigation*, 2005 WL 5678842, at *6 (C.D.Cal. 2005).  Plaintiff is not privy to the parties in *Lopez* because the parties intended to limit their decree to claims about improper charges for calls made to *cellular* telephones only, and, most importantly, to provide for injunctive relief only - not monetary relief.  *Bechtel Petroleum,* 633 F.Supp. at 502-03; *Cross v. Earls,* 517 S.W.2d 751, 752-53 (Tenn. 1974) (release executed by parties expressly related to particular claims only - damage to automobile - and did not bar other claims arising out of accident, including for personal injury) Hence, Plaintiff is not bound by the *Lopez* decree/release.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN,
Attorneys for Plaintiff

By:___/s/ James E. Cecchi_____
      JAMES E. CECCHI

Dated:  April 18, 2008

Of counsel:

Paul M. Weiss
William M. Sweetnam
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Steven R. Jaffe
Mark S. Fistos
ARONOVITZ JAFFE
Museum Tower, Suite 2700
150 West Flagler Street
Miami, Florida  33130
(305) 372-2772

Eric Stoppenhagen
LAW OFFICE OF ERIC
STOPPENHAGEN
285 Avenue C
Suite #MB
New York, New York 10009
(646) 594-8669