FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        )
MICHAEL COPPOLINO, et al.               )
                                        )        Civil No. 08-539 (FSH)
                  Plaintiffs,           )
                                        )
              v.                        )        **OPINION AND ORDER**
                                        )
TOTAL CALL INTERNATIONAL,               )        December 1, 2008
INC.,                                   )
                                        )
                  Defendant.            )
_____)


**HOCHBERG, District Judge**

      This matter comes before the Court upon Defendant Total Call International Inc.'s

("Total Call") Motion to Dismiss Plaintiff's class action complaint and Motion to Take Judicial

Notice of the Proceedings Before the Tennessee Chancery Court in <u>Jose Ma. A.S. Lopez et al v.</u>

<u>Van Oriental Food Store and Total Call International, Inc.</u>, No. CH 04-228-2 (Tenn Ch. Ct,

2004).  After requesting supplemental briefing from the parties, the Court held oral argument on

the motions on October 22, 2008.


## I. **Factual and Procedural Background**

      Plaintiff Michael Coppolino brings this class action under 28 U.S.C. §1332(d) on behalf

of himself and others similarly situated against Defendant Total Call International, Inc., a

company that produces and sells prepaid calling cards.  Plaintiff alleges that Defendant fails to

clearly and conspicuously disclose material facts and conditions on the use of its prepaid cards.

Compl. ¶4.  Specifically, Plaintiff challenges Defendant's imposition of a "host of standard conditions, fees, and charges that Defendant surreptitiously imposes for its own profit," Id. at ¶5, and Defendant's failure to "disclose on its Cards the price the consumer pays per billing decrement (10 cents per minute of calling time for example)". Id. at ¶25.  These conditions allegedly reduce the stated value of the cards significantly. Id.  Plaintiff seeks to represent a class of all persons who purchased Prepaid Calling Cards which were produced, sold and/or distributed by Total Call throughout the United States, and/or a Class of all residents in specific sister states with substantially similar statutes designed to protect consumers against unfair or deceptive business practices. Id. at ¶34.  The Complaint asserts causes of action for violation of substantially similar consumer protection statutes (Count I), unjust enrichment (Count II), money had and received (Count III), and declaratory relief pursuant to 28 U.S.C. § 2201 (Count IV).

Defendant moves to dismiss the Complaint on the ground of *res judicata*, based on a previous class action against Total Call in Tennessee Chancery Court,  Jose Ma. A.S. Lopez et al v. Van Oriental Food Store and Total Call International, Inc., No. CH 04-228-2 (Tenn Ch. Ct. 2004) ("Lopez").  The Lopez amended complaint brought claims against Total Call for damages and injunctive relief under the Tennessee Consumer Protection Act, and for conversion, unjust enrichment, and breach of contract under Tennessee law.[1]

Total Call reached a settlement with the Lopez plaintiffs and the Tennessee Chancery Court entered a Consent Decree resolving the matter.  The Consent Decree included a release discharging any claims and

---

[1]The Lopez amended complaint brought claims 'solely and exclusively' under Tennessee law and specifically disclaimed any causes of action based in any way upon federal law.

2

> "causes of actions of any kind, by the Plaintiffs, the Class or the Class Members (except
> for those who have elected to "opt out" of the Class), arising out of or relating in any way
> to Defendant's sale of prepaid calling cards during the Class Period....
>  The full and general releases referred to in this Section ... are intended to be full and final
> binding releases of all claims that were asserted or that arise out of or relate to the claims
> that were asserted against Defendant in this Action by the Class and such release shall be
> construed broadly to affect that purpose."

Defendant argues that because the Plaintiff in the instant case (Coppolino) is included in the class

definition of the previous Lopez action, the release contained in the Lopez Consent Decree bars

this action.

Plaintiff argues that the instant Complaint is not barred by the Lopez Consent Decree in

Tennessee based on several alternate and independent bases: 1) The causes of action in this case

are different because the Lopez Complaint solely addressed fees charged on calls made to and/or

from cellular phones, while the instant action challenges the full range of undisclosed fees and

surcharges, as well as the undisclosed billing decrement; 2) Even if the two cases were deemed

sufficiently similar causes of action, the Tennessee settlement violated the due process rights of

the nationwide class it purported to bind by the Lopez settlement; 3) The Notice of settlement

published in the Lopez action was deficient on several grounds, the most significant of which

was the failure to give notice of the right to 'opt out' of the class; 4) Because class members were

neither apprised of their right to opt out, nor of the fact that their claims for monetary damages

would be extinguished, Plaintiff contends that the Lopez action should be deemed to have only

barred injunctive relief based on the limited cause of action brought in that case; and 5) The

settlement reached in Lopez was fundamentally unfair because it provided absolutely no

monetary benefit to putative class members, a small award to the three named plaintiffs ($1,500

each), an inappropriate *cy pres* distribution which provided no benefit to class members

($100,000, split evenly between two churches and a University), and a huge provision for

attorneys fees as a percentage of financial recovery ($262,500, or approximately 71.5% of the

total recovery from Defendant).  Such a 'submarine settlement', it is argued, is fundamentally

unfair and cannot extinguish the monetary claims of the instant Plaintiff.


**II.  <u>Standard of Review</u>**

To survive a Rule 12(b)(6) Motion to Dismiss, "factual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  <u>Bell Atlantic Corp. v. Twombly</u>, __ U.S. __, 127

S.Ct. 1955, 1965 (2007).  As the Third Circuit has recently stated:

> The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be
> summed up thus: "stating . . . a claim requires a complaint with enough factual
> matter (taken as true) to suggest" the required element.  This "does not impose a
> probability requirement at the pleading stage," but instead "simply calls for
> enough facts to raise a reasonable expectation that discovery will reveal evidence
> of" the necessary element.

<u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (internal citation omitted,

alteration in original) (quoting <u>Twombly</u>, 127 S. Ct. at 1965).

Although a court does not need to credit a complaint's "bald assertions" or "legal

conclusions," it is required to accept as true all of the allegations in the complaint as well as all

reasonable inferences that can be drawn therefrom and view them in the light most favorable to

the plaintiff.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (citing <u>Rocks</u>

<u>v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989)).  In evaluating a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider the Complaint, exhibits attached to

the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents.  Pension Ben. Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1992).   While ordinarily a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings, a court may take judicial notice of matters of public record that a defendant attaches to a motion to dismiss without converting the motion into one for summary judgment.  See In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997); In re Bayside Prison Litigation, 190 F.Supp.2d 755, 760 (D.N.J. 2002).

## III.  Analysis

### A.    Judicial Notice of the Lopez Action

By Motion of March 28, 2008 (Docket Entry #8), Total Call requests that this Court take judicial notice of the 1) First Amended Complaint, 2) Affidavit of Rodney C. Lee regarding publication of class action notice, and 3) Final Consent Decree in the Lopez action.  Plaintiffs have not objected to this request, and the Court has reviewed the aforementioned documentation as well as the Notice to class members published in The USA Today newspaper on May 14, 2007 ('Lopez Notice').  See Declaration of Lindsey H. Taylor, Exhibit A (submitted with Plaintiff's Opposition Papers, Docket Entry #13).  The Court grants the unopposed motion to take judicial notice of these documents.  See In re Burlington Coat Factory Securities Litigation, 114 F.3d at 1426.[2]

---

[2] For the first time in response to the Court's request for supplemental briefing, the Defendant also submitted two separate documents purportedly from the Lopez action.  These included a document entitled 'Settlement Agreement and Release' (Exhibit B to Defendant Total

**B.     The *Res Judicata* Effect of the <u>Lopez</u> Action**

Under the federal Full Faith and Credit statute, 28 U.S.C. §1738, a federal court is "required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgements emerged." <u>Kremer v. Chemical Const. Corp.</u>,456 U.S. 461, 466 (1982).  Thus, to determine whether issue preclusion is a necessary consequence of prior state court litigation, a court must look to the law of the state adjudicating the prior action.  <u>Grimes v. Vitalink Communications Corp.</u>, 17 F.3d 1553, 1562 (3d Cir. 1994).  Tennessee courts apply a four-factor test to determine whether the doctrine of *res judicata* applies.  <u>Young v. Barrow</u>, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003).  "Parties asserting a res judicata defense must demonstrate (1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that both proceedings involved the same parties or their privies, and (4) that both proceedings involved the same cause of action."  <u>Id.</u> (internal citation omitted).

The doctrine of *res judicata* does not apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate the claim.  <u>Kremer</u>, 456

---

Call's Supplemental Brief (Docket Entry #28)), and a separate document entitled 'Stipulation of Settlement and Order of Provisional Entry of Consent Decree' (Exhibit D to Defendant's Supplemental Brief).  The latter document appears to be the one referenced in the final Lopez Consent Decree, of which the Court has taken judicial notice.  Counsel for Total Call proffered at oral argument that the 'Settlement Agreement and Release' was both authentic and the embodiment of the <u>Lopez</u> parties' agreement, but that he had not submitted it earlier because he had not been able to find it earlier and had to petition the Tennessee court to retrieve it.  The Consent Decree entered by the Tennessee Chancery Court is the operative official document containing the release in the action, and nowhere in the Decree is a separate 'agreement and release' incorporated by reference.  Because neither of the documents submitted with Defendant's supplemental brief were included in the Motion to Take Judicial Notice, the documents are not judicially noticed; however, the Court has reviewed these documents and notes that nothing in them would change the result of this opinion.

U.S. at 481 & n.22.  The previous state court must satisfy the requirements of the Due Process

Clause if the subsequent action is to be barred.  Id. at 482.

     1.  *Application of Tennessee* Res Judicata *Factors*

     The Tennessee Chancery Court that presided over the <u>Lopez</u> action and entered the

Consent Decree rendering judgment in that case was a court of competent jurisdiction.  <u>See</u>

<u>Media Group, Inc. V. Tuppatsch</u>, 298 F.Supp.2d 235, 241 (D. Conn. 2003) ("The Tennessee

Chancery Court is unquestionably a 'court of competent jurisdiction.'").  Under Tennessee law, a

consent judgment settling a litigation operates as *res judicata* to the same extent as a final

judgment on the merits.  <u>Gerber v. Holcomb</u>, 219 S.W.3d 914, 917 (Tenn. Ct. App. 2006).

     The parties dispute whether the Plaintiff in this case was also a party to the <u>Lopez</u> action.

Defendant argues that the Tennessee Chancery Court certified a nationwide class, and that

Coppolino (as well as the class he purports to represent) falls within the definition of the <u>Lopez</u>

Class.[3]  Because the Classes overlap, Defendant contends that the same parties are involved in

the case *sub judice*.  Plaintiff argues that Coppolino was not party to the <u>Lopez</u> decree because he

did not consent to it, nor authorize it, nor receive notice reasonably calculated to draw the matter

to his attention, and was not given the right to opt out.  (Plaintiff's arguments about deficiencies

in the Lopez Notice are closely related to his due process arguments, which will be addressed

below.)

     According to the terms of the <u>Lopez</u> class definition, Coppolino would be included in that

---

     [3] The <u>Lopez</u> Consent Decree defined the Class as "all Plaintiffs and all persons in the
United States who purchased and used one or more prepaid telephone calling cards issued by
Total Call during the Class Period." Class Period is, in turn, defined as "the period of time from
December 1, 1999 to May 31, 2007."

class if the relevant dates of purchase coincided.  The <u>Lopez</u> class consisted of "all person who purchased and used one or more prepaid telephone calling cards issued by Total Call between December 1, 1999 and May 31, 2007."  Def. Br. at 8.  The proposed class in the Complaint before this Court is defined as "all persons who purchased Prepaid Calling Cards which were produced, sold, and/or distributed by Total Call throughout the United States."  Compl. ¶34 (alternative proposed class definition omitted).  While the instant Complaint does not allege a date range for the proposed class, Plaintiffs allege that Coppolino purchased one or more of Defendant's cards in 2007.  <u>Id.</u> at ¶10.  It is unclear if this purchase was before or after May 31, 2007.  As the Court's ruling does not turn on this factor, the Court will assume, without deciding, that the present case involves the same parties as the <u>Lopez</u> action.

The parties also dispute whether this case involves the same cause of action as the <u>Lopez</u> case.  Under Tennessee law, the "principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case."  <u>Hutcheson v. Tennessee Valley Authority</u>, 604 F.Supp. 543, 550 (M.D. Tenn. 1985) (internal citation and quotation marks omitted).  Defendant argues that the primary duty is the same in both actions because Plaintiffs in both actions allege that Total Call infringed Plaintiffs' rights to be fully informed consumers when Total Call withheld information and failed to make full disclosures relating to calling card fees.  Defendant argues that the specific reference to wrongs arising from 'cellular phone' hidden charges in the <u>Lopez</u> complaint, Consent Decree and Notice, does not change the fundamental similarity of disclosure obligations between the two cases.

Plaintiff argues that both the <u>Lopez</u> complaint and Consent Decree addressed only undisclosed rates on calls made to cellular telephones.  Plaintiff contends that the claims in the

instant case are not so limited, and challenge a substantively different 'wrong'.  Pl. Br. at 20

(citing Hutcheson 604 F.Supp. at 549).  Plaintiff maintains that the evidence in Lopez was only

about cellular phones, and that the Lopez Consent Decree was primarily for injunctive relief,

providing no pool for individual financial recovery for class members other than named

plaintiffs;  in this action, Plaintiff argues that he seeks to recover monetary relief under state

consumer protection statutes and common law.  Id.

      The Complaint in this case does not mention cellular telephones.  Plaintiff challenges

Defendant's 'undisclosed fees, surcharges and conditions',  Compl. at ¶3, and the failure to

disclose 'the price consumer pays per billing decrement.' Id. at ¶25.  The conditions,

standardized fees, and 'surcharges which are not regulated rates or taxes' challenged in the

Complaint stand in contrast to the Lopez complaint, which specifically and repeatedly alleges

wrongs arising from hidden charges for cellular telephone connections.  See Lopez Compl. at ¶1

("long distance minutes are more rapidly depleted for international calls made to and/or from

**cellular telephones**..."); ¶11 (describing increased 'contracted for charges' for calls made to

**cellular phones**); ¶12 (alleging plaintiffs across the US received "fewer minutes of actual use

time than set forth in the telephone card agreements when making international calls to and/or

from **cellular telephones**"); ¶13; cf ¶16 ("It was reasonably anticipated by all parties that

telephone calls would be made to and/or from **cellular telephone equipment**.  If in fact an

additional charge was to be made for the service involving such equipment, information about

other additional charges and increased charges for time use should have been properly disclosed

to consumers.") (emphases added). Further, the Lopez Class Notice itself stated that the Lopez

"class action lawsuit was brought in 2004, alleging that Total Call failed to adequately disclose to

its consumers that calls made to **cellular phones** may be subject to a higher per minute charge."
See Lopez Notice (emphasis added).   The legend that Total Call agreed to put on the back of its
calling cards, as described in the Lopez Notice, confirms the limited scope of the Lopez action.
See Id. ("Calls made to **cellular phones** may be subject to a higher per minute charge.")
(emphasis added).  While the Lopez Consent Decree contains a release of all claims "relating in
any way to Defendant's sale of prepaid calling cards", the terms of the Consent Decree limit the
scope of the release to "full and final binding releases of all claims *that were asserted or that
arise out of or relate to* the claims that were asserted against Defendant *in this Action by the
Class*...."  Lopez Consent Decree at 4 (emphasis added).  Thus, while the Lopez release states
that it 'shall be construed broadly', it explicitly limits the release to the claims brought (or that
relate to claims brought) in that action, which are for disclosures that arise out of or relate to
hidden charges for cellular phone usage.

At oral argument, Plaintiffs counsel was asked if charges relating to calls made to cellular
telephones were included in Plaintiff's allegations.  Counsel responded in a subsequent letter to
the Court that Plaintiff is unable to carve out claims related to undisclosed surcharges for calls
made to or from cellular telephones.  See Docket Entry #35.  Thus, the instant Complaint is
broader than the Lopez action, but overlaps with the causes of action in Lopez with respect to
cellular phone hidden fees.

The instant Complaint states a cause of action far broader than the claims of Lopez.  The
Court finds that the primary duty or wrong is different in this case for all counts and causes of
action that are not based on cellular phone hidden fees during the class period in Lopez.
Defendant's position that Lopez's settlement of cell phone fees insulates Total Call from all

10

claims for Defendant's alleged violation of any and all 'disclosure obligations' simply proves too much.

Thus, with respect to the counts/causes of action in the instant Complaint that challenge the conduct of Total Call other than hidden cell phone fees,[4] the Court finds that this cause of action is not the same 'primary right, duty or wrong', and thus is not barred by the doctrine of *res judicata*.

We now turn to the remaining portion of Plaintiff's Complaint that does relate to undisclosed cellular phone connection fees prior to May 31, 2007.  The following sections of this opinion are reached only with respect to those claims that 'overlap' the <u>Lopez</u> 'primary right, duty or wrong.'  To determine whether this portion of the Complaint is precluded by the <u>Lopez</u> action, the Court must determine whether the procedures followed by the Tennessee Chancery Court comported with due process.

### C.  Due Process Concerns and the <u>Lopez</u> Notice

As noted above, a previous state court must satisfy the requirements of due process if a subsequent action is to be barred.  <u>Kremer</u>, 456 U.S. at 482.  Plaintiff contends that the <u>Lopez</u> Court violated due process because 1) class members were not provided an opportunity to opt out of the settlement; 2) the notice was not the 'best practicable under the circumstances' for several reasons; and 3) the settlement was substantively unfair because class members other than named plaintiffs received no monetary benefit, while attorneys fees were a huge percentage of the

---

[4]At the close of discovery, Plaintiff will be required to file a statement of particulars, specifying his allegations and proofs, and separating his claims into two categories: one for damages relating to cell phone fees and one for damages relating to all other fees challenged in the Complaint.

recovery.  In its reply, Defendant argues that the Tennessee Chancery Court complied with the minimum requirements of due process and that the <u>Lopez</u> Consent Decree's release binds the current Plaintiff.  Defendant further contends that the proper forum to challenge the due process rights of the <u>Lopez</u> class is the Tennessee appellate court (although how a Plaintiff would be able to appeal the Tennessee case long after it has been closed is not addressed by Total Call).

In <u>Phillips Petroleum Co. v. Shutts</u>, the Supreme Court stated that in order to bind an absent plaintiff's claim for money damages based on a previous class action judgment, the previous court must provide minimal procedural due process protection.  472 U.S. 797, 811-812 (1985).  The Court held that the "plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  <u>Id.</u> at 812. (internal citation and quotation marks omitted).  Most importantly for the purposes of this motion, the <u>Shutts</u> Court continued, "[a]dditionally we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." <u>Id.</u> In a related footnote, the Court noted that these requirements apply to class actions which seek to bind plaintiffs for predominately money judgments (and intimated no view on claims seeking equitable relief).  <u>Id.</u> at 812 & n.3.

Several courts have noted that a subsequent court should exercise caution when collaterally reviewing a previous foreign court's conclusions regarding due process issues such as sufficiency of notice and adequacy of representation in class action lawsuits.  See <u>e.g.</u>, <u>Moody v.</u>

Sears Roebuck and Co., 664 S.E.2d 569, 581 (N.C. App. 2008) (suggesting that a limited review approach is consistent with relevant Supreme Court case law).  The Ninth Circuit has said that a reviewing court should not reconsider the merits of a previous claim or issue decided in a foreign court but rather should only consider whether absent class members' due process rights were protected by the adoption of the appropriate procedures by the certifying court.  Epstein v. MCA, Inc., 179 F.3d 641, 648-49 (9th Cir. 1999).  The Epstein Court noted that the Supreme Court in Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 378-79 (1996) had previously satisfied itself that due process requirements had been met in a previous Delaware court judgment (the case was on review from a federal court in the Ninth Circuit) by "referencing the Delaware court's findings on these matters, rather than by independently determining whether the [due process] requirements were met."  Epstein, 179 F.3d at 649.

The Notice of the settlement in Lopez was published one day in a national newspaper. The text of the Notice did not inform class members of their right to opt out.  While the Tennessee court settlement included an opt-out right, the Tennessee court did not make any finding that class members had been properly notified of their right to opt out.  The 'Stipulation of Settlement and Order of Provisional Entry of Consent Decree' stated that "Class Members shall have until and through ten (10) days prior to the date of the Fairness Hearing to request exclusion from the Class...", but no notice of such right was stated in the form of Class Notice approved by that same document (and attached thereto as Exhibit 1), nor in the published Notice. See Exhibit B to Def's Supp. Br. at 4 et seq.  Thus, the Tennessee court approved the form of Class Notice without making a finding that the form of Notice notified class members of the right to opt out, See Id. ¶¶ 4, 7, nor any finding or statement of reasons why it was unnecessary to

inform class members of the right to opt out in the published Notice.  The Tennessee court also made no finding that the Notice was the 'best practicable under the circumstances,' nor did it explain why or how class members would know of the right to opt out without having notice of that right.

The Tennessee court approved and certified the <u>Lopez</u> Class pursuant to Tennessee Rule of Civil Procedure 23.02(3) (which closely tracks Federal Rule 23(b)(3)), and it was thus an opt-out class.  The <u>Lopez</u> Notice, as approved by the Tennessee court, provided an email address and fax number where class members could obtain a copy of the complete Settlement Agreement, and also provided an address to which class members could mail objections to the Settlement.  <u>See</u> <u>Lopez</u> Notice (stating that "a complete copy of the Notice of Settlement attaching the complete Settlement Agreement" could be obtained).   Presumably one requesting this documentation would have received the form of Notice (entitled 'Notice of Class Action Settlement') attached as Exhibit 1 to the 'Stipulation of Settlement and Order of Provisional Entry of Consent Decree', and the 'Settlement Agreement and Release' (attached as Exhibit C to Defendant's supplemental brief).  As mentioned above, the form of Notice did not apprise class members of their right to opt out.  If a class member had written to request a copy of the settlement agreement, that 'Settlement Agreement and Release' also did not include the opt-out right.  The 'Settlement Agreement and Release' merely described the pending <u>Lopez</u> litigation, set forth the substantive terms of the settlement agreement (including the payments and legend regarding charges to cellular phones), and stated that the language of the Settlement Notice as well as the disclosure language to be placed on the back of calling cards, would be subject to court approval.

At oral argument, Total Call contended that by merely publishing an address where "Class Members who wish to object to the parties' Settlement Agreement [could] file written objections", Total Call sufficiently apprised class members of their rights. However, filing an objection to a class action settlement is fundamentally different from opting out of the class. Total Call has cited no law in support of its novel argument, and has not sought judicial notice of nor adduced any other evidence that the Tennessee court had its attention drawn to this issue and made appropriate findings upon which this Court can rely. Shutts quite clearly requires class members to be given the opportunity to opt out of a class if their monetary damages claims will be extinguished. Shutts, 472 U.S. at 811-12 (1985). Providing a mechanism to object to a settlement is simply not the same as apprising class members of their ability to remove themselves from the class.

In sum, Defendant has not provided this Court with findings made by the Lopez Court that class members were adequately notified of their right to exclude themselves from the Tennessee class action, nor that the Lopez Notice was the 'best practicable under the circumstances.'

This case thus stands in sharp contrast to the New Jersey Supreme Court's recent review of a Tennessee nationwide class action in Simmermon v. Dryvit Systems, Inc., 953 A.2d 478 (2008), which the Defendant raised for the first time at oral argument. There, the New Jersey court was aided by specific findings by the Tennessee Circuit Court that the notice approved by that court "constituted the best practicable notice and was reasonably calculated under the circumstances to apprise members of the pendency of the class action, and of their right to exclude themselves from the Class and the proposed settlement." Id. at 482 (internal citations

15

omitted).  Furthermore, unlike <u>Lopez</u>, the Tennessee Circuit Court referenced in <u>Simmermon</u> held three separate fairness hearings and reviewed a comprehensive report detailing the means for notifying class members of the settlement.[5]  <u>Id.</u> at 487-88.  This Court has neither the benefit of such findings from the Tennessee Chancery Court, nor the type of developed record that the <u>Simmermon</u> court had.

This Court does not at this time evaluate the monetary and injunctive value of the <u>Lopez</u> settlement because the two independent and alternative holdings herein regarding the nature of the cause of action, and the failure to notify class members of the right to opt out, are sufficient to deny the motion to dismiss.[6]  Because <u>Shutts</u> does not mandate notification of the right to opt out

---

[5] That notice consisted of direct mailings to 85,000 class members and multiple publications of notice in several major national periodicals as well as local newspapers and relevant trade publications.  <u>Simmermon</u>, 953 A.2d at 487-88.

[6] By doing so, this Court does not denigrate Plaintiff's argument that there are serious additional concerns about the sufficiency of the <u>Lopez</u> Notice and settlement.  The Notice in <u>Lopez</u> was published only once in an English-language newspaper (albeit one with the significant national circulation), and it is alleged that Total Call sells the majority of its cards to non-English speaking immigrants.  <u>See</u> Compl. at ¶8.  Several courts have noted that it is appropriate to issue foreign language notices in similar circumstances.  <u>See</u> e.g., <u>Smith v. DaimlerChrysler Services North America, LLC</u>, 2005 WL 2739213, at *3 (D.N.J. 2005) (approving class action settlement with Notice published in Spanish language publications); <u>see also</u> Manual for Complex Litigation, Fourth, §21.31(noting that counsel should discuss with the court whether publication of notice in a foreign language is appropriate); <u>cf</u> <u>In re Visa Check/MasterMoney Antitrust Litigation</u>, 297 F.Supp.2d 503, 516 (E.D.N.Y. 2003) (finding that absence of publication in Spanish did not warrant the denial of approval of Settlement Agreements on direct review, though noting that such publication would have been useful).

Furthermore, the <u>Lopez</u> plaintiffs received absolutely no monetary benefit in return for the extinguishing of their monetary damages claims.  The monetary settlement in <u>Lopez</u> consisted of a $1,500 award to three named plaintiffs; $100,000 split evenly among two churches and Pepperdine University; and $262,500 in attorneys fees.  While <em>cy pres</em> distributions are permitted in situations where class recovery cannot feasibly be distributed to individual class members or where unclaimed funds remain following distribution to the class, such distribution is generally limited to situations where class members receive some indirect benefit from the distribution.  <u>In re Matzo Food Products Litigation</u>, 156 F.R.D. 600, 605-06 (D.N.J. 1994).

in actions for injunctive or equitable relief, any claims seeking injunctive relief for hidden

cellular phone charges are barred by *res judicata*.

Defendant's motion to dismiss is **DENIED**.   It is **SO ORDERED**.


**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

---

Defendant has argued that the size of individual recovery in <u>Lopez</u> would have been small, and that it would not be feasible to distribute $100,000 to a nationwide class, but it is not clear how the donations to two churches and Pepperdine University benefitted class members.  Moreover, Total Call has produced no findings of the Tennessee court that it would not be feasible to distribute the money to the class or otherwise use the money for a purpose that would benefit the class; nor has Total Call produced any findings by the Tennessee court that using over 70% of the settlement proceeds for counsel fees is proper.