UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL COPPOLINO, and NORA MONDAY individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TOTAL CALL INTERNATIONAL, INC., <br><br> Defendant. | Civil Action No.: 08-539(FSH) |

**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

James E. Cecchi
**CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN**
5 Becker Farm Road
Roseland, New Jersey 07068

Paul M. Weiss
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

*Plaintiffs' Counsel*

**PRELIMINARY STATEMENT**

Plaintiffs Michael Coppolino and Nora Monday (collectively "Plaintiffs") respectfully submit this brief in support of their joint motion for preliminary approval of a proposed class settlement (the "Settlement"), the terms of which are set forth in a Class Settlement Agreement and Release, dated June 26, 2009 (the "Agreement").[1] The Settlement will provide direct benefits to settlement class members worth $1,900,000.00 and, if approved, would resolve all of plaintiffs' claims against Total Call. The parties reached this Settlement following a thorough investigation by Plaintiffs' counsel and mediation under the supervision of the Hon. Douglas K. Wolfson (Ret.).

Total Call International, Inc. ("Total Call") sells prepaid telephone calling cards, which is the product at issue in this action. The Settlement, among other things, requires Total Call to (1) issue up to $1,900,000.00 of refund personal identification numbers ("PINs") that eligible consumers of Total Call's calling cards can use to make domestic phone calls and phone calls to certain international locations; and (2) provides injunctive relief consistent with Total Call's 2009 settlement with the New Jersey Office of the Attorney General, Division of Consumer Affairs. The Settlement is the result of good faith, arms-length negotiations among experienced counsel for the parties, and is an excellent compromise in light of the merits of plaintiffs' claims and Total Call's defenses, and of the factual and legal risks of continued litigation through trial and an almost-certain appeal. The Settlement represents a highly favorable result for the putative class, and therefore meets the test for preliminary approval.

For the reasons set forth below, the parties therefore respectfully request that the Court

---

[1] A copy of the Agreement is attached as Ex. 1 to the accompanying Certification of James E. Cecchi dated June 26, 2009 ("Cecchi Cert.").

enter an order (1) granting preliminary approval of the proposed Settlement; (2) conditionally certifying a class for purposes of settlement (the "Settlement Class"); (3) approving their proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider their request for final approval of the Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses.

## STATEMENT OF FACTS

### A. Factual Background and Procedural History of This Action

Plaintiffs brought this action individually and on behalf of all persons who purchased prepaid calling cards which were produced, sold, or distributed by Total Call throughout the United States. Plaintiffs alleged that Total Call sold and marketed calling cards that advertise a certain amount of airtime minutes, but that do not actually deliver those minutes to the consumer. Plaintiffs further claimed that the value of Total Call's cards – *i.e.*, the minutes delivered by the cards – is reduced by charges and fees that Total Call imposes that are either not disclosed, or are inadequately disclosed, to consumers. Because Total Call sold calling cards in all fifty states Plaintiffs sought nationwide class certification.

This matter began when Mr. Coppolino, a Massachusetts resident, filed his Complaint in the United States District Court for the District of New Jersey on January 9, 2008, captioned *Coppolino v. Total Call Int'l., Inc.*, Civ. Act. No. 08-539 (D.N.J.). After this Court denied Total Call's motion to dismiss on December 3, 2008, Mr. Coppolino amended his complaint, adding Ms. Monday, a California resident, on December 8, 2008 (referred to herein as the "Action"). A Second Amended Complaint will be filed in conjunction with this Agreement.

In this Action, Plaintiffs allege that Total Call employed unlawful, unfair and deceptive practices in its marketing and sale of prepaid calling cards. Plaintiffs further allege that Total Call markets its prepaid calling cards primarily to low income and immigrant consumers who are particularly vulnerable to the alleged deceptive practices. Plaintiffs claim that they have suffered a variety of injuries because of Total Call's alleged practices. The Second Amended Complaint asserts six specific claims: (1) violation of the consumer fraud statutes of each and every state; (2) unjust enrichment; (3) misrepresentation; (4) fraud; (5) money had and received; and (6) declaratory relief pursuant to 28 U.S.C. § 2201. Plaintiffs seek damages, injunctive relief and attorneys' fees as to each claim.

During the settlement negotiations, the parties agreed to use a settlement framework similar to one that had been accepted by one of Total Call's competitors in a similar action with similar factual and legal allegations. Judge Susan D. Wigenton, U.S.D.J. approved that class settlement before Mr. Coppolino filed the first of these actions. The remuneration offered to the settlement class in this settlement is consistent with that first settlement and reflects Total Call's market share.

Plaintiffs were receptive to the settlement structure and engaged in the due diligence necessary to adequately protect the interests of putative class members in part by reviewing the revenue streams and customer base of Defendant. Plaintiffs made a settlement offer based on that review.

When negotiations reached an impasse, the parties agreed to submit the dispute to Judge Wolfson for mediation. The parties prepared substantive mediation statements and presentations to Judge Wolfson, and engaged in an in-person mediation session on May 21, 2009. At the conclusion of this mediation and with the ample assistance of Judge Wolfson, the parties had

agreed upon the substantive terms of the settlement, which are presented in this filing.

### B. Reasons for the Settlement

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, and the likelihood of successfully obtaining or defeating class certification, and then prevailing on the ultimate merits of the suit, while being mindful of the considerable burdens and risks of litigation. Total Call believes that Plaintiffs' claims are defensible and denies any liability for allegedly failing to properly and adequately disclose the true costs of making telephone calls using its calling cards. For their part, Plaintiffs believe that the claims against Total Call are meritorious, that a national class of its customers could be certified for liability purposes, and that they would be successful on their claims if this matter proceeded to trial.

Nonetheless, the parties have concluded that the benefits of settlement outweigh the risks of litigation in light of: the substantial and immediate benefits afforded to the Settlement Class by the Settlement; the uncertainties and difficulties associated with obtaining class certification for liability purposes; the legal and factual defenses that have been asserted by Total Call; the expense and length of time necessary to see this matter through to trial; the uncertainties of the outcome of the litigation; and the possibility for appellate review

There are a number of significant legal and factual hurdles that, if this case were to proceed to trial, Plaintiffs would need to clear in order to prevail. For instance, Plaintiffs would have had to establish that the law of New Jersey should apply to all class members throughout the country. The case law in this jurisdiction regarding the appropriateness and manageability of such a class would make this proposition difficult. If the Court denied class certification, then absent a settlement, there would be no recovery for the class members and no benefit to any

4

consumer.

Moreover, if the Agreement had not been reached, Total Call would have raised a host of grounds for opposing liability on the merits. For example, Total Call would likely have argued that it sufficiently disclosed all rates and charges associated with its cards and that the overwhelming majority of class members did not read or rely on the calling card "disclosures" before purchasing their calling cards. If the fact-finder accepted Total Call's position Plaintiffs would be unable to establish liability.

In light of these risks, Plaintiffs and their counsel believe that the Settlement, which provides immediate monetary benefits worth $1,900,000.00 to the class, represents an excellent result for both themselves and the members of the Settlement Class, and merits preliminary approval.

**C. The Settlement Terms**

The Settlement resolves all claims asserted against Total Call by the members of the Settlement Class upon the following general terms, by which Total Call agreed to:

(1) Cause $1,900,000.00 in settlement proceeds to be made available to Settlement Class members in the form of "Refund PINs."

(2) Total Call shall provide injunctive relief consistent with the business practices it agreed to pursuant to its 2009 settlement with the New Jersey Office of the Attorney General.

(3) Pay reasonable notice costs and up to $400,000.00 in attorneys' fees and out-of-pocket litigation expenses, subject to this Court's approval.

The Agreement also provides for the form and manner of class notice, the method through which the proceeds of the Settlement will be provided to Settlement Class Members (the "Notice Plan"), and the procedure by which class counsel will apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this action. Thus, the Agreement

5

contemplates that Plaintiffs will seek and obtain certification of the Settlement Class to effect both the Settlement and the Notice Plan.

## ARGUMENT

## POINT I

## THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the three-step process for approval of a settlement brought on a class basis: (1) the Court must preliminarily approve the proposed settlement; (2) members of the Settlement Class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable and adequate. *See* FED. R. CIV. P. 23(e); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) ("*GM Trucks*"); MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.41 (1995).

### A.  The Standards for Preliminary Approval

The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of possible approval." MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.41 at 237 (1995). This preliminary determination establishes an initial presumption of fairness when the court finds that (1) the negotiations occurred at arms' length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation. *See* 2 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.41, at 11-9; *GM Trucks,* 55 F.3d at 785; *see also* MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.41, at 236 (1995).

Preliminary approval does not require a court to answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That decision is made at the final

6

approval stage following notice of the settlement to the class members and after the proposed class has had an opportunity to voice their views of the settlement. *See* 3B J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 23.80[2.-1] at 23-479. Preliminary approval is merely a prerequisite to providing notice so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983).

As noted by the Court of Appeals for the Third Circuit, "[the] preliminary determination establishes an initial presumption of fairness . . . ." *GM Trucks,* 55 F.3d at 785. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . ." MANUAL FOR COMPLEX LITIGATION (SECOND), § 30.44 (1985).

Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig.,* 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Id.* Here, experienced counsel engaged in a lengthy course of adversarial negotiations, supervised mediation and settlement discussions, and ultimately concluded that the proposed Settlement is in the best interests of their respective clients (and, in the case of Plaintiffs'

7

counsel, of the Settlement Class). The parties were fully informed of the merits of their and their adversary's claims and defenses, and in light of that strong understanding of the case and the risks of continued litigation, approved this settlement, which does not favor one group of putative class members over others, or provide richer results for the named Plaintiffs.

In addition, the Settlement Agreement satisfies a preponderance of the nine factors enunciated in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975), and is thus fair, reasonable and adequate. Specifically, the proposed class settlement offers class members several advantages, including compensation for their alleged injuries with no obligation to pay attorneys' fees and a speedy resolution of their claims. Considering the likely duration, cost and complexity of continued litigation and the risks of establishing damages in an industry where putative class members rarely preserve proof of purchase, the proposed settlement is significant when compared to the best possible recovery. Certainly, the Settlement falls within the "range of possible approval." It should, therefore, be submitted to the Settlement Class members for their consideration, and this Court should schedule a hearing to determine whether the Settlement is "fair, reasonable, and adequate" to the Settlement Class and should be approved by the Court.

### B. The Proposed Method of Class Notice is Appropriate

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see also In re AremisSoft Corp. Sec. Litig.,* 210 F.R.D. 109, 119 (D.N.J. 2002). The notice must concisely and clearly state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the

class any member who requests exclusion, stating when and how members may be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).

In this case, where the parties seek to simultaneously certify a settlement class and settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement).  *See, e.g., Zimmer Paper Prods., Inc.* v. *Berger & Montague, P.C.,* 758 F.2d 86, 90-91 (3d Cir. 1985).

The proposed method of providing notice to the Settlement Class meets the requirements of Rule 23(c)(2) and provides for a comprehensive Notice Plan.  As shown by the Agreement and enumerated in its exhibited proposed Order Granting Motion for Preliminary Approval of Class Action Settlement and Directing Dissemination of Class Notice (the "Proposed Order of Preliminary Approval"), the Settlement requires multiple forms of notice, including:

- a website with the terms of the settlement;

- a link to the above website on www.totalcallusa.com/news and www.freedweiss.com;

- publication of a summary form of the Notice (the "Summary Notice"), in a form substantially similar to that exhibited to the Agreement, (i) as a national press release via PR Newswire (or similar entity); and (ii) one time per week for two consecutive weeks in USA Today and La Opinion (Spanish), World Journal (Chinese), Philippine News (Filipino), and Nguoi Viet (Vietnamese);

- direct mail notice to all prepaid calling card customers whose identification information is reasonably accessible from Total Call's business records to the extent that it has records of such customers' mailing addresses;

9

- a dedicated, toll-free telephone number containing the information set forth in the summary notice; and

- notice posted at certain retail locations where Total Call Prepaid Calling Cards are sold to the public.

The proposed Notice itself also meets the requirements of Rule 23(c)(2). The Notice is accurate and informative. It also describes the terms and benefits of the settlement, the date, time and place of the hearing on final settlement approval, the procedures and deadlines for submitting comments, objections, and requests for exclusion, the general terms of class counsel's application for attorneys' fees and expenses, a description of the proposed plan for providing the Refund PINs, and several other matters of possible interest.

## POINT II

## THE SETTLEMENT CLASS SHOULD BE CERTIFIED

It is well-settled that the Court may certify a class for settlement purposes, provided that it engages in a Rule 23(a) and (b) inquiry. *In re Community Bank of N. Va.,* 418 F.3d 277, 299 (3d Cir. 2005); *GM Trucks,* 55 F.3d at 786. While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to [ ] class certification" and is "a factor in the calculus." *Amchem Prods., Inc.* v. *Windsor,* 521 U.S. 591, 619, 622 (1997). For example, settlement is relevant in that "a district court need not inquire whether the case, if tried, would present intractable management problems. . . ." *Community Bank,* 418 F.3d at 300, quoting *Amchem Prods.,* 521 U.S. at 620 (internal citation omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 314 (3d Cir. 1998).

While Total Call would certainly have argued that this Action could not have been certified for trial due to serious management problems, the Court need not be concerned with

trial management issues in the settlement context. Instead, it need only consider "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Community Bank,* 418 F.3d at 299, quoting *Amchem Prods.,* 521 U.S. at 621. The facts here demonstrate the suitability of this action for class certification for settlement purposes.

To be certified, a settlement class in which the class members receive money damages must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and the so-called "predominance of common issues" and "superiority of the class action device" requirements of Rule 23(b)(3). *Community Bank,* 418 F.3d at 302. As set forth below, each of these requirements is fully satisfied.

### A. Numerosity

The class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 227-28 (3d Cir. 2001). "Class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 467 (E.D. Pa. 2000). Although the precise number of Settlement Class members cannot be determined because most of Total Call's customers purchased its calling cards at local retail locations (such as convenience stores) without providing any personal identification information, by its very nature, the Settlement Class includes literally millions of members. Thus, numerosity is readily established.

### B. Commonality

The commonality requirement is satisfied if the named plaintiffs share at least one

question of fact or law in common with the class. *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). "Because the requirement may be satisfied by a single common issue, it is easily met . . . ." *Fry,* 198 F.R.D. at 467. Clearly, there are questions of law and fact common to the Settlement Class, the resolution of which would advance the litigation. *See id.* at 467 (existence of single common issue sufficient for certification). A simple reading of the Amended Complaint in the Action demonstrates that there are numerous questions of law or fact common to the Settlement Class. These including whether: (1) Total Call misrepresented or omitted certain facts regarding the rates charged and costs related to its calling cards; (2) Total Call engaged in unlawful, deceptive, fraudulent, or misleading conduct regarding such calling cards; (3) Such alleged misrepresentations and omissions were material; (4) Such conduct violated the similar consumer fraud statutes of other states; and (5) Plaintiffs and the members of the Settlement Class sustained damages as a result of the alleged misconduct, and, if so, the appropriate measure of such damages. The Settlement Class possesses sufficient commonality to merit certification.

### C. Typicality

The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members," *Stewart,* 275 F.3d at 227, and is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Cases challenging the same unlawful conduct that affects both the named plaintiffs and the class usually satisfy the typicality requirement, even if varying fact patterns may underlie individual claims. *Baby Neal,* 43 F.3d at 58. A claim will not be deemed atypical if it "arises from the same event or practices or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder,*

*Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992). The typicality requirement is satisfied here, as Plaintiffs' claims, evidenced by the factual allegations in the Amended Complaint, mirror those of the Settlement Class.

### D. Adequacy of Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation, and he or she must not have interests antagonistic to those of the class. *See, e.g., Prudential,* 148 F.3d at 312; *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982).

Plaintiffs' counsel is qualified, experienced and able to conduct this litigation. Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein and Freed & Weiss LLC specialize in class action and other complex litigation in courts throughout the country, including consumer, securities, corporate governance, healthcare and antitrust litigation. Cecchi Cert. Exs. 2, 3. In addition, Plaintiffs have – and will continue – fairly and adequately represented the interests of the Settlement Class. Plaintiffs and the members of the Settlement Class purchased one or more of Total Call's calling cards, and allege that Total Call's misleading advertising regarding call rates and hidden charges and fees harmed them. Plaintiffs' interests are co-extensive with – not antagonistic to – those of the unnamed, absent members of the Settlement Class.

### E. Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual

13

members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The existence of individual questions of fact does not *per se* preclude class certification. *Eisenberg v. Gagnon,* 766 F.2d 770, 787 (3d Cir. 1985). Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623.

Class certification is generally appropriate where a defendant has engaged in a pattern of uniform activity that is challenged by the complaint. *See id.* at 624 (predominance requirement readily established in cases alleging consumer fraud); *Prudential,* 148 F.3d at 314-15 (predominance requirement satisfied where class members' claims arise from common scheme by defendant). In addition, the common question of law in this action – namely, whether Total Call's practice of allegedly concealing hidden and excessive usage charges or inadequately disclosing the "true costs" of using its calling cards violated statutory and common law – predominates over any individual legal issues that may exist. Certification of the Settlement Class is therefore warranted under Rule 23(b)(3) because questions of law and fact predominate over questions affecting only individual class members.

The proposed Settlement is vastly superior to any other method of handling this Action because each Plaintiffs or consumers claims, taken individually, is of such a relatively low dollar value that, as a practical matter, absent the use of the class action device, no individual plaintiff would be able to press his or her claims through trial and appeal.

In sum, because each of the elements of Rule 23(a), b(2) and (b)(3) is satisfied, this action should be certified as a class action for purposes of effectuating the Settlement.

**CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court enter an order: (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Settlement Class; (3) approving their proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider their request for final approval of the Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses.

Respectfully submitted,

    /s/ James E. Cecchi
James E. Cecchi
**CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN**
5 Becker Farm Road
Roseland, New Jersey 07068

- and -

Paul M. Weiss
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

*Plaintiffs' Counsel*

Dated: June 26, 2009